. P. W. SINNOTT, Petitioner, v. DISTRICT COURT OF CLARKE COUNTY et al., Respondents.

ELIZA JANE WADE et al., Appellees, v. C. C. TABLER et al., Appellants.

ELIZA JANE WADE et al., Appellees, v. P. W. SINNOTT, Appellant.

**FENCES:** **Jurisdiction of Fence Viewers.** Township trustees as ex-
1 officio fence viewers have no jurisdiction to apportion between adjoining owners of land the maintenance of partition fences, in the absence of any written request by one owner to the other for such apportionment and maintenance.

CERTIORARI: When Writ Lies—Illegal Action of Fence Viewers.
Certiorari will lie to review the proceedings of township trustees in acting as fence viewers without jurisdiction of the subject-matter, even though an appeal is provided for in such proceedings. (See Book of Anno., Vol. 1, Section 12456, Anno. 85 *et seq.*)

CERTIORARI: Parties—Nonnecessary Party. On certiorari to review the action of fence viewers, the party who initiated the proceedings is not a necessary party.

CERTIORARI: Costs. Costs in certiorari proceedings to annul the void proceedings of fence viewers are properly taxed to the party who initiated the proceedings before the fence viewers, such party being a party to the certiorari proceedings by consolidation of other actions therewith. (See Book of Anno., Vol. 1, Sec. 12464, Anno. 23 *et seq.*)

FENCES: Right to Maintain—Injunction. In the absence of a division of a partition fence by agreement of the parties or by proper order of the fence viewers, either of the adjoining owners has the right to build and maintain all or any part of the fence; and an injunction which curtails such right is unallowable.

Headnote 1: 25 C. J. pp. 1027, 1028 (Anno.) Headnote 2: 11 C. J. p. 115. Headnote 3: 11 C. J. p. 143 (Anno.) Headnote 4: 11 C. J. p. 215 (Anno.) Headnote 5: 25 C. J. p. 1023 (Anno.)

*Certiorari to and appeals from Clarke District Court.*—HOMER A. FULLER, Judge.

FEBRUARY 9, 1926.

THE three above entitled causes are: (1) A petition in certiorari to review the action of the district court of Clarke County; (2) an appeal by the defendants from the judgment of the lower court in an action of certiorari; and (3) an appeal by the defendants from a decree in equity. The opinion states the facts.—*First case, writ discharged; second case affirmed; third case modified and affirmed.*

*O. M. Slaymaker* and *R. E. Killmar,* for appellants.

*M. R. Stansett,* for appellees.

VERMILION, J.—The occasion of this somewhat intricate controversy is a simple thing, a partition fence. The practical

considerations of a proper division and maintenance of the fence—the only things, we take it, in which the litigants may be supposed to be vitally interested—are quite obscured by questions of procedure.

In the interest of simplicity of statement and easy understanding of the situation we shall refer to the parties by name or official title. Eliza Jane Wade, a widow, and her five adult children are the owners in common of 40 acres of land adjoining land belonging to P. W. Sinnott, and Mrs. Wade is the owner of an 80-acre tract which adjoins the land of Sinnott for a distance of half a mile. On April 2, 1924, Sinnott in writing requested the township clerk to call out the township trustees, to act as fence viewers in an alleged controversy between himself, on one hand, and Mrs. Wade and her cotenants on the other, as to the fences between these tracts. The township trustees caused notice of the time and place of their meeting to be served on Sinnott and Mrs. Wade and her cotenants. At the time and place designated in the notice, A. F. Wade and A. L. Wade, two of Mrs. Wade's cotenants, appeared with an attorney and objected to the jurisdiction of the trustees to take any action, for the reason that, previous to their being called out by Sinnott, he had made no written request of Mrs. Wade or the other owners of the land for a division or repair of the partition fences. After the departure of the Wades and the attorney accompanying them, the trustees proceeded to view the lines, and made a written order dividing the fences and requiring Mrs. Wade to erect and maintain her part thereof and to trim certain hedge, and requiring her and her cotenants to erect, maintain, repair, and rebuild their part of the fence and trim certain hedge thereon. This order was filed with the township clerk. Thereafter, Mrs. Wade and her cotenants sued out of the district court a writ of certiorari, to review the action of the trustees, alleging that they acted without jurisdiction and illegally, because, among other reasons, Sinnott had made no written request of them, as owners of adjoining land, to divide, repair, or maintain the partition fences or trim the hedge. The trustees alone were made defendants in this action.

Mrs. Wade and her cotenants also commenced an action in

1. FENCES: jurisdiction of fence viewers.

equity against Sinnott, to enjoin him from repairing, rebuilding, constructing, or asserting or assuming control of that part of the fence assigned to him by the fence viewers as his part of the partition fence. A temporary injunction was issued.

These two actions were consolidated and tried together in the court below, resulting in a decision in favor of Mrs. Wade and her cotenants, the plaintiffs therein. In the certiorari proceeding against the trustees, their action was set aside and annulled, and the costs therein taxed to Sinnott. In the injunction case, the injunction was made permanent. The trustees and Sinnott have appealed from the judgments and decrees against them. Sinnott also sued out a writ of certiorari in this court, to review the decision of the lower court in the first certiorari proceeding against the trustees and the judgment for costs against him in that action.

I. Section 2355, Code of 1897, was as follows:

"The respective owners of adjoining tracts of land, except timber land not used otherwise than for the timber thereon, from which each derives any revenue or benefit, shall be compelled to erect and maintain partition fences, or contribute thereto, and keep the same in good repair throughout the year, and if said fence be hedge, the owner thereof shall trim or cut it back once in two years to within five feet from the ground, unless such owners otherwise agree in a writing to be filed with and recorded by the township clerk."

By Chapter 52, Acts of the Thirty-eighth General Assembly, that section was amended, so far as here material, to read: "The respective owners of adjoining tracts of land shall upon written request of either owner be compelled to erect and maintain partition fences, or contribute thereto, and keep the same in good repair," etc.

The thirty-ninth general assembly, by Chapter 76, repealed the section as it then stood, and re-enacted it, with a change only as to the time and manner of cutting hedge. The last named act was in force at the time of the action of the fence viewers. The present statute makes no change here material, and is found in Chapter 88, Code of 1924.

Sinnott made no written request of Mrs. Wade or her cotenants to divide the partition fence or to repair or rebuild it

or to cut the hedge, before calling out the fence viewers. There is some claim that such a notice was sent by mail to Mrs. Wade, but the evidence fails to sustain it.

When the law as it previously stood, the matter to be remedied, and the nature and spirit of the statute are considered (*State v. Clairborne*, 185 Iowa 170; *Elks v. Conn*, 186 Iowa 48), it is plain that a landowner can only be compelled, under the statute as amended, to build or repair a partition fence after a written request by the adjoining owner that he do. so. Under the prior statute, the duty to build and repair a partition fence was absolute where each owner derived a benefit or revenue from his land, and was nonexistent in other cases. By the amendment, the right was secured to one adjoining owner to compel the other to contribute to a partition fence on written request, without regard to the use to which either put his land.

The word ''compelled'' was in the statute both before and after the amendment. It is clearly used in the sense of duty or obligation,—not in the sense of enforcing action by superior authority. Before the amendment, the mere fact of adjoining ownership and use of the land by each for profit compelled— that is, imposed a duty upon—both owners to build and repair the partition fence. After the amendment, one is compelled— that is, is under a duty—to build or repair a partition fence only on the written request of the other, and without regard to his use of the land. The enforcement of the duty, the actual compelling of its performance, under both statutes rested with the fence viewers, in a proper case.

The plain purpose of the statute is to impose no obligation on one landowner, enforcible by the fence viewers, to build or repair a partition fence, until written request of the adjoining owner upon him to do so. The fence viewers are given authority only to determine controversies. Section 2356, Code of 1897 (Sections 1831, 1832, Code of 1924); *Anderson v. Cox*, 54 Iowa 578. The landowner is not to be compelled by the fence viewers to do something he is not required by law to do, or subjected to the expense incident to calling them out, until the duty to act has been imposed on him by the request of the adjoining owner. Until then, there can exist, in such case, no such controversy as the statute contemplates. The written request

is an essential prerequisite to the creation of the duty the fence viewers may enforce; it is essential to their jurisdiction to act at all. Without it there is nothing of which they could take jurisdiction.

It may be that the parties could waive the making of such a request by agreeing to submit the matter to the fence viewers, or that they should be held to have done so by appearing and participating in the hearing, consenting to their jurisdiction; but we do not think such consent on the part of Mrs. Wade and her cotenants can be predicated on the appearance of two of them with an attorney, to object to the jurisdiction of the fence viewers on the very ground that no such request had been made. They did no more than this, and were not present at, and did not participate in, the hearing. Moreover, they did not claim to act for or represent Mrs. Wade or the other owners not present, and no authority on their part to do so is shown. The thing they were objecting to was not a lack of notice to them of the time and place of the hearing, or a failure to acquire jurisdiction of the persons, but a lack of jurisdiction of the subject-matter. Proper notice of the hearing was given, and this gave jurisdiction of the persons, whether they appeared or not; but jurisdiction of the person did not give jurisdiction of the subject-matter.

II. Certiorari is a proper remedy where an inferior tribunal exercising judicial functions is exceeding its proper jurisdiction, or is otherwise acting illegally, and there is no other plain, speedy, and adequate remedy. Section 4154, Code of 1897 (Section 12456, Code of 1924).

2. CERTIORARI: when writ lies: illegal action of fence viewers.

It is urged that there was an adequate remedy by appeal from the order made by the fence viewers, and that for that reason certiorari was not available to Mrs. Wade and her cotenants. Since the fence viewers acted without jurisdiction of the subject-matter, certiorari was a proper remedy, and the parties aggrieved were not limited to the right of appeal. *Abney v. Clark*, 87 Iowa 727; *Young v. Preston*, 131 Iowa 292; *U. S. Standard Voting Mach. Co. v. Hobson*, 132 Iowa 38; *Berkey v. Thompson*, 126 Iowa 394; *Des Moines Union R. Co. v. Funk*, 185 Iowa 330; *Hickman v. Hunter*, 159 Iowa 201.

III.   Sinnott was not a necessary party in the certiorari proceedings against the trustees to annul their action as fence viewers.   *Tod v. Crisman,* 123 Iowa 693; *Davis v. Preston,* 129 Iowa 670.   He was, however, a party to the action in equity which was consolidated with the certiorari proceeding, and thus was afforded, and availed himself of, the opportunity to be heard in opposition to the writ.

3. CERTIORARI: parties: non-necessary party.

IV.   Complaint is made that the lower court taxed the costs in the certiorari proceedings instituted there to Sinnott, who was not a party.   He was the real party in interest in the order attacked.   The fence viewers acted in a judicial capacity.   The costs were properly taxed to him.   *Tiedt v. Carstensen,* 64 Iowa 131; *Hickman v. Hunter,* supra.

4. CERTIORARI: costs.

V.   The decree in the injunction case made perpetual and permanent the injunction as prayed for in the petition.   The petition asked that Sinnott be restrained from "repairing, rebuilding, constructing, or assuming control of, as his part of the said partition fence," the portion assigned to him by the fence viewers, and from in any way asserting control of said fence as being his part of the fence to maintain, construct, repair, or rebuild.

5. FENCES: right to maintain: injunction.

In the absence of a division of the fence by agreement of the parties, or by valid action of the fence viewers, Sinnott has a right to build and maintain such portions or all of the fence, if he sees fit to do so.   *De Mers v. Rohan,* 126 Iowa 488.   It is only the assertion of a right to any particular portion of the fence on the part of Sinnott that Mrs. Wade and her cotenants can object to, and only until a legal division may be made.   An injunction restraining Sinnott from asserting a right to control any part of the fence as being his part to construct, maintain, repair, or rebuild, until a legal division of the fence is made, is all the other parties were entitled to.

The writ of certiorari issued in this court will be discharged.

The judgment of the lower court in the certiorari proceeding commenced there will be affirmed.

In the equity case, the decree will be modified in accordance with this opinion, and affirmed.   One tenth of the costs in this

court will be taxed to appellees.—*Writ discharged; modified and affirmed.*

DE GRAFF, C. J., and STEVENS and FAVILLE, JJ., concur.